IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PATRICK J. GRIFFIN, III            :
                                   :
v.                                 :    Civil Action WMN-00-2837
                                   :
DEPARTMENT OF VETERANS AFFAIRS,    :
et al.                             :

**MEMORANDUM**

Before the Court are: Plaintiff's Motion for Award of Attorney's Fees and Costs (Paper No. 19); Defendants' Motion to Stay Proceedings on Plaintiff's Motion for Attorney's Fees and Costs (Paper No. 21); Defendants' Motion for Clarification and, if Necessary, to Stay Implementation of Judgment Pending Appeal (Paper No. 27); and, Plaintiff's Motion for Contempt Against Defendants and for Award of Attorney's Fees (Paper No. 29). All motions have been fully briefed and are ripe for decision. Upon a review of the pleadings and the applicable case law, the Court determines that: Defendants' motion to stay proceedings on Plaintiff's motion for attorney's fees and costs will be granted; Defendants' motion for clarification and, if necessary, to stay implementation of judgment will be granted; and, Plaintiff's motion for contempt will be denied.

**I. DISCUSSION**

On January 29, 2001, this Court issued an order permanently enjoining Defendants, Department of Veterans Affairs, Robert Walker, Roger Rapp, and Robin Pohlman, from interfering with

Plaintiff Patrick Griffin's display of the Confederate battle flag at Point Lookout Confederate Cemetery ("Point Lookout"), located in St. Mary's County, Maryland. The accompanying memorandum stated that

> [t]he form of relief granted is that Plaintiff shall be permitted to display, on a daily basis between the hours of 9:00 a.m. and 6:00 p.m., a full-sized, historically accurate Confederate battle flag <u>from its own pole</u> at Point Lookout. The pole shall be at least three feet lower than the U.S. flagpole at Point Lookout. The placement of the flag is to be agreed upon by the parties but in close proximity to either the Federal or State monument. Plaintiff is to provide all material and labor necessary for the daily placement and removal of the flag. A sign shall be erected at the base of the flagpole clearly indicating that the display of the Confederate flag is provided by and supported by a private party or parties.

Griffin v. Department of Veterans Affairs, 129 F.Supp.2d 832, 839 n.9 (D. Md. 2001) (emphasis added).

Defendants filed a notice of appeal with the Fourth Circuit on March 28, 2001. The Fourth Circuit has not yet rendered a decision.

### A. Motion for Attorney's Fees and Costs

Plaintiff, as the prevailing party, filed, on February 12, 2001, a motion for the award of attorney's fees and costs. The motion is rather voluminous and seeks over $138,000 in fees and costs under three theories: that Defendants acted in bad faith; that the "common benefit" exception applies; and that Defendants' position was not "substantially justified." In addition,

Plaintiff's counsel requests an enhancement multiplier of twenty percent and market rates, rather than the customary statutory rates under 28 U.S.C. § 2412(d), on the theory that counsel's expertise in First Amendment law is a "special factor" justifying a departure from the statutory rate.

Rather than oppose the motion, Defendants responded by filing a motion to stay proceedings on Plaintiff's motion. Defendants prime argument in support of their motion is that the entire issue of attorney's fees and costs may be mooted by Defendants filing, and prevailing on, an appeal.[1] Therefore, according to Defendants, it would be a waste of a "substantial expenditure of resources" to argue the issue prior to a decision by the Fourth Circuit. The Court agrees.

A District Court has discretion to stay proceedings on a fee application pending appeal. See <u>Hicks v. Southern Md. Health Sys. Agency</u>, 805 F.2d 1165, 1167 (4th Cir. 1986).[2] Therefore, the Court, in is discretion, will grant Defendants' motion to stay all proceedings relating to Plaintiff's request for attorney's

---

[1] At the time of this motion Defendants had not filed a notice of appeal. Such notice was subsequently filed on March 28, 2001.

[2] The Court agrees with Defendants that Local Rule 109.2.a does not impinge on the Court's discretion. The only requirement under Local Rule 109.2.a is that the application for attorney's fees and costs be <u>filed</u> within 14 days of the entry of judgment. There is no corresponding time limitation on the Court as to when it must rule on such an application.

fees and costs pending a decision by the Fourth Circuit on Defendants' appeal.

### B. Motion for Clarification and Stay

In accord with this Court's January 29, 2001 Memorandum and Order, Plaintiff, by letter dated March 13, 2001, notified Defendant Robin Pohlman, Director of Point Lookout, of his intentions regarding the placement and installation of a permanent flagpole at Point Lookout. Specifically, Plaintiff stated his intention to erect a flagpole measuring 37 feet above ground.[3] To secure the flagpole, Plaintiff proposed a surface concrete pad measuring approximately six feet square. See Griffin Letter Dated March 13, 2001, at 1. Further correspondence indicated that the area below the six foot square surface pad would consist of a below surface foundation measuring approximately four and one-half feet deep and three and one-half feet wide. See Pole Tech Manufacturing Specifications.

Defendants, in their motion, argue that the proposed construction is not what was contemplated by the Court when it issued its January 29, 2001 Memorandum and Order. Defendants request that, if the Court did intend to permit construction of a permanent foundation and flagpole, such as that proposed by

---

[3]The height of the proposed flagpole is in accord with this Court's Order, which stated that the pole from which the Confederate battle flag is flown must be at least three feet lower than the U.S. flagpole at Point Lookout. The U.S. flagpole measures, at a minimum, 40 feet above ground.

4

Plaintiff, that the Court modify its January 29, 2001 Order to so state.  Conversely, Plaintiff asserts that this Court's Order does not need clarification; that the Order contemplates installation of 37 foot flagpole which, by necessity, would require a solid foundation to anchor it.

The wording of this Court's January 29, 2001 Memorandum and Order contemplates that Plaintiff will install a new flagpole that is at least three feet lower than the U.S. flagpole at Point Lookout.  As there is no dispute that the U.S. flagpole measures at least 40 feet above ground, Plaintiff is permitted to erect a pole no more than 37 feet above ground.  It follows, then, that a solid foundation is required to anchor the flagpole.  While the specifications provided by Pole Tech[4] do not include a flagpole of the exact proposed height, the Court can extrapolate the approximate base requirements from these specifications.  In so doing, a flagpole with an overall length of 42 feet and an exposed height of 37 feet would require a concrete base with a below ground depth measuring approximately 45 inches deep and 33 inches wide, and a foundation top of approximately 39 inches square.  See Pole Tech Manufacturing Specifications.  Plaintiff, pursuant to the Court's Order, is permitted to erect a flagpole

---

[4] Pole Tech is a flagpole manufacturer.

meeting the above specifications.[5]

If the Court finds, as it has, that Plaintiff is entitled to erect a permanent flagpole and foundation, then Defendant requests a stay of the implementation of this Court's judgment pending appeal.[6] To secure a stay pending appeal, the party seeking the stay must show: (1) that he will likely prevail on the merits of the appeal; (2) that he will suffer irreparable injury if the stay is denied; (3) that other parties will not be substantially harmed by the stay; and (4) that the public interest will be served by granting the stay. Goldstein v. Miller, 488 F.Supp. 156, 172 (D. Md. 1980) (quoting Long v. Robinson, 432 F.2d 977, 979 (4th Cir. 1970)), aff'd, 649 F.2d 863 (4th Cir.), cert. denied, 454 U.S. 828 (1981).

As to the likelihood-of-success factor, Defendants argue that they will prevail on the merits because the decision threatens the sanctity of national cemeteries and the display of a Confederate flag in a national cemetery is inappropriate as it will be perceived as government speech. Defendants also maintain that their decision to not permit the daily display of the

---

[5] The Court notes that these foundation specifications, particularly the surface area, differ from those proposed by Plaintiff.

[6] Defendants, however, indicate that they are willing to permit, on a temporary basis pending appeal, Plaintiff to display a Confederate battle flag from Defendants' own temporary flagpole and existing base. Plaintiff has rejected this offer.

Confederate flag was viewpoint neutral and reasonable in light of the mission, regulations, and policies governing national cemeteries. Plaintiff, contrarily, asserts that "Defendants have virtually no chance of winning on the merits" because they are unable to show that their selective discrimination against the Confederate flag is either view point neutral or reasonable.

"The likelihood-of-success standard does not mean that the trial court needs to change its mind or develop serious doubts concerning the correctness of its decision in order to grant a stay pending appeal." Goldstein, 488 F.Supp. at 172. Rather, "tribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." Id. at 172-73 (quoting Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc., 559 F.2d 841, 834-45 (D.C. Cir. 1977). This case involves a conflict between Plaintiff's freedom of speech and Defendants' duty to preserve and maintain national cemeteries, such as Point Lookout. This conflict includes serious questions regarding Defendants' rights to limit speech that may be offensive to certain individuals or groups. At the very least, these issues present difficult and serious questions of law. Therefore, the Court concludes that Defendants have met the burden imposed by the first of the four applicable factors.

7

Next, Defendants argue that they will suffer irreparable injury if their motion for stay is not granted, in that Plaintiff's proposed construction will require excavating a large hole and filling it with concrete. Defendants further contend that their injury is exacerbated by the fact that, if the appellate decision is unfavorable to Plaintiff, the concrete foundation and pad will have to be removed. Both of these activities will require the use of heavy machinery and will risk damage to the existing fences, sidewalks, and turf at Point Lookout, not to mention the disruption to the tranquility and dignity of Point Lookout. Plaintiff refutes Defendants' argument by asserting that Defendants are "selective" in their complaints about excavation because Defendants have excavated Point Lookout to erect several structures. Plaintiff also discounts Defendants' concerns about the possible removal of the structure by stating that, if removal is necessary, he will pay for and arrange such removal. Therefore, according to Plaintiff, there is no harm to Defendants. The Court disagrees.

While there is little doubt that any structure placed by Plaintiff could also be removed, that does not negate the disruption to Point Lookout and the possible problems in returning Point Lookout to its original condition. Furthermore, there is a very tangible difference between the excavation done by Defendants and that proposed by Plaintiff. In the case of

8

Defendants' excavation, all of the items erected were intended to be permanent structures. Here, given the pending appeal, there is no certainty that the proposed structure will be permanent. Therefore, this factor weighs in favor of granting Defendants request for a stay.

As to the third factor, Defendants contend that there is a lack of harm to Plaintiff because his professed purpose of honoring the Confederate dead can be accomplished by the display of the Confederate flag from a temporary flagpole pending appeal. Plaintiff refutes this contention by asserting that he will be irreparably harmed because any deprivation of speech constitutes serious injury. Plaintiff further argues that the temporary flagpole is a poor substitute because of the threat of vandalism or theft to the pole and/or the flag.

Permitting Plaintiff to display the Confederate flag from a temporary flagpole does not deprive Plaintiff of his right to speak.[7] As to the threat of vandalism or theft, Plaintiff has not explained how the risk would be increased by the use of the temporary pole. It would appear that a person intent on interfering with Plaintiff's display could damage or steal the flag in either situation. Furthermore, if the damage is to the

---

[7] While this solution would not be satisfactory if intended to be implemented on a permanent basis, for the relatively short period of time at issue during the pendency of Defendants' appeal it is a more than reasonable accommodation.

temporary flagpole itself, that loss would be born solely by Defendants as they are the party responsible for supplying the flagpole, and they are the party who would be required to promptly replace or repair the pole if it is stolen or damaged.

As to the public interest factor, Defendant argues that the public interest is best served by preserving all cemeteries as national shrines and that this purpose cannot be served by permitting Plaintiff to excavate a portion of Point Lookout for the purpose of erecting a structure that may have to then be removed. Plaintiff argues that the display will not negatively impact the peace and tranquility, and will enhance the purpose of Point Lookout by further honoring those buried there. Both are valid public interests. Therefore, on balance, this factor does not appear to weigh heavily in favor of either party.

For the above reasons, Defendants' motion for a stay of implementation of this Courts judgment pending appeal will be granted. In lieu of allowing Plaintiff, at this time, to erect a flagpole and base pursuant to this Court's January 29, 2001 Order, as clarified above, Plaintiff is permitted to immediately begin the daily display a Confederate battle flag from Defendants' temporary flagpole. Defendants shall immediately make such flagpole available to Plaintiff. In the event there is any damage to, or theft of, the temporary flagpole, Defendants

shall replace the pole immediately.  In accord with the Court's January 29, 2001 Memorandum and Order, Plaintiff shall provide the flags to be displayed as well as all labor necessary for the daily placement and removal of such flag.  In the event the Fourth Circuit affirms this Court's Order, Plaintiff shall be permitted to immediately begin installation of a permanent flagpole and concrete foundation as specified in this Court's January 29, 2001 Memorandum and Order, and as clarified by this Memorandum and Order.

### C. Motion for Contempt

Plaintiff moves this Court to find Defendants in contempt and to award sanctions in the amount of $1.00 in addition to attorney's fees.  This Court has found that a stay is appropriate as to the implementation of this Court's January 29, 2001 Memorandum and Order pending a decision by the Fourth Circuit.  Based on this finding, there are insufficient grounds on which to find Defendants in contempt and Plaintiff's motion will be denied.

### II. CONCLUSION

For the foregoing reasons, Defendants' motion to stay proceedings on Plaintiff's motion for attorney's fees and costs will be granted, Defendants' motion for clarification and to stay implementation of judgment pending appeal will be granted, and

Plaintiff's motion for contempt will be denied.

                                    _____
                                    William M. Nickerson
                                    United States District Judge

Dated: July 3, 2001